FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS
FEB 0 5 2014
BY DAVID J. MALAND, CLERK
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | § | |
|---|---|---|
| **David E Mack** | § | |
| *Plaintiff,* | § | Case No. **4:13-cv-544** |
| | § | |
| vs | § | |
| | § | |
| **PROGRESSIVE FINANCIAL** | § | |
| **SERVICES, INC.,** | § | |
| **CHRISTOPHER HALE** | § | |
| *Defendants.* | § | |
| | § | |

### PLAINTIFF DAVID E. MACK'S RESPONSE AND BRIEF IN SUPPORT IN OPPOSITION TO DEFENDANT PROGRESSIVE FINANCIAL SERVICES, INC.'S MOTION FOR SECURITY FOR COSTS UNDER LR CV-65.1(b)

Comes Now Plaintiff *pro se*, David E. Mack, and hereby files his Response and Opposition to Defendant Progressive Financial Services, Inc.'s (Progressive) Motion for Security for Costs Under LR CV-65.1(b) and Memorandum of Law and in support thereof states as follows:

1. The instant action is admittedly not the first that Plaintiff has filed in this Court to assert his rights under both state and federal consumer protection statutes however it is the first action brought against Progressive.

2. Defendant unjustly attempts to infringe on Plaintiff's right of equal access to the courts to seek redress of violations of his rights.

3. Plaintiff contends that Defendant and/or its Counsel filed the instant motion in bad faith.

4. Plaintiff contends the instant motion is retaliatory in nature and an attempt to thwart, inhibit and suppress Plaintiff's efforts to assert his rights under state and federal consumer

protection statutes and to intimidate him into dismissing his well founded and documented claims against the Defendants.

## I. BACKGROUND

5. The case arises from the actions of Progressive Financial, Inc. and its employee/collector Christopher Hale in attempting to collect an alleged consumer debt from the Plaintiff in December 2012.

6. Plaintiff made a proper request for validation of the alleged debt pursuant to the FDCPA. Defendants replied with information that was confusing, misleading and contradictory to the Plaintiff and void of any information that a reasonable person or an unsophisticated consumer could understand regarding the alleged debt. Plaintiff was confused as to who the alleged debt might actually be owed to, what it was for and the exact amount that was due and owing yet the Defendants clearly stated they were still attempting to collect the debt.

## II. STATEMENT OF THE CASE

7. On or about December 20, 2012 the Plaintiff received a dunning letter from the Defendants [Doc. 13-1] and pursuant to the Fair Debt Collection Practices Act (FDCPA) made a request for validation of the debt alleged to be owed to the City of Dallas. [Doc. 13-2]

8. Defendants responded to the Plaintiff's request for validation with another collection letter [Doc. 13-3] and what appeared to be a single page computer printout with various comments and unknown terminology (suspensed) and several amounts shown which were confusing, misleading and contradictory to the Plaintiff as to who the actual creditor might be and the actual amount that may have been due. [Doc. 13-4] The only identification of any entity on the document provided as purported "validation" was *Penn Collection Agency* and no

identification as to any connection with the alleged creditor, City of Dallas, was apparent. Defendants again stated they were attempting to collect a debt.

9. Plaintiff responded in a letter that what the Defendants had sent him was contradictory and confusing and to cease any further collection activity until they could provide actual validation of the debt alleged to be owed. [Doc. 13-5] Plaintiff received no response or further attempts at validation of the alleged debt.

10. On March 28, 2013 Plaintiff sent a notice to the Defendants of the violations of the FDCPA and made an attempt to mitigate damages by attempting to reach a settlement for said violations without engaging in litigation. The Defendants failed to respond.

11. Plaintiff sent a Notice of Pending Lawsuit with a copy of the Complaint to the Defendants in a further attempt to settle the matter prior to litigation and mitigate damages. A response from Barbara A. Hoerner, Esq. included a statement that Defendants could obtain no further validation information and Progressive would make no further attempts to collect the debt. The letter was also dismissive of Plaintiff's claims and stated "If you do even a cursory search of the law - or if you even read the statutes you will see that your threatened lawsuit has no merit."

12. Having failed to reach a settlement Plaintiff moved forward and filed his Original Complaint with exhibits on September 18, 2013 and filed his First Amended Complaint with exhibits on January 27, 2014 that brought causes of action only under the FDCPA.

### III. ARGUMENTS AND AUTHORITIES

13. The Texas Vexatious Litigants Statute provides that a trial court **"may find a plaintiff a vexatious litigant if the defendant shows there is not a reasonable probability that the plaintiff will prevail in the litigation against the defendant"** and one of three indicators of

vexatious behavior, including that "**the plaintiff, in the seven-year period immediately preceding the date makes the motion. . . has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been finally determined adversely to the plaintiff[.]**" TEX.CIV.PRAC. & REM. CODE ANN. § 11.054 (Vernon 2002). (Emphasis added)

14. The motion for security of costs brought in this case is totally unfounded as to reason and has no basis in fact whatsoever. Progressive and/or its Counsel have made scurrilous allegations that the Plaintiff is a vexatious litigant with absolutely no factual basis upon which the allegations could possibly rest. **There is not one factual statement or argument by the Defendant that the Plaintiff has no probability of prevailing in this litigation.**

15. The motion brought by the Defendant and/or its Counsel is nothing more than a very blatant attempt to intimidate and coerce the Plaintiff into dismissing his well founded and exhibited Complaint and constitutes an abuse of judicial procedure and is a waste of the Court's valuable time and resources to hear the motion.

16. Defendant's motion attempts to make much of nothing in that it alleges facts that are plainly in error and makes unfounded and derogatory allegations without merit which fall wholly outside any issues brought forth in Plaintiff's Original and First Amended Complaints.

17. Defendant states "Plaintiff is believed to run websites giving *pro se* litigants advice on filing suits against debt collection agencies under the FDCPA, TCPA and various other statutes" and attaches Exhibit A as **purported** evidence in support of its allegations.

18. Defendant's statements are false in that **NONE** of the screenshots contained in Exhibit A are of any websites that Plaintiff has any ownership interest in or management control over. The first two pages of Exhibit A are screenshots of pages of a website on which the owner

of the website (myprivateaudio.com) has posted various information that does relate to debt collection in various content and does reference the Plaintiff. **Plaintiff has no ownership interest in or control over** the content on that website contrary to the allegations made by Progressive. [*See* Exhibit 1¶1]

19. The remainder of the pages in Exhibit A are screenshots of another website (whatliesinyourdebt.com) which is a website that **Plaintiff has no ownership interest in nor any management authority as to the content** on the site contrary to the allegations made by Progressive. [*See* Exhibit 1¶2]

20. Exhibit C is screenshots of the domain registration information for knockoutcollectors.com and knockoutcollectors.net which are both registered to the Plaintiff. There are NO online active websites for those domain names nor has there ever been. [*See* Exhibit 1¶3] The fact that the Plaintiff has certain domain registrations with no active websites at those domains has absolutely nothing to do with the instant case or whether Plaintiff is a vexatious litigant.

21. The allegation that Plaintiff operates websites that give *pro se* litigants advice on filing suits is plainly **FALSE** and irrelevant to the instant case before this Court. [*See* Exhibit 1¶4] It would seem Progressive or its Counsel believe that anyone who would do anything to suggest that a person should study to be able to mount any defense to debt collection actions or speak of doing so publicly should somehow be vilified, stifled, suppressed, silenced or worse, and their activities should not be permitted. It appears they have a **"how dare people study, learn, discuss, and strategize to defend against what we do"** mentality.

22. Defendant's Exhibit B is screenshots of talkshoe.com website pages for "Dallas Debt Discussion" and of other pages that Plaintiff is unfamiliar with. These are referenced by the statement "Plaintiff also hosts a radio talk show titled "Dallas Debt Discussion" weekly on

every Monday night for the last five years **discussing** with various people and *pro se* litigants about their cases, strategy problems, *et cetera.*" The key word here is "**discussing**."

23. The idea that Defendant or its Counsel would even mention Plaintiff's participation in a call that **discusses** debt issues and how to properly and legally deal with them *from the consumer perspective* is quite amazing. The **discussions** on Dallas Debt **Discussion** are about many different issues and situations and are completely divorced from the instant case in every respect and are an exercise of ALL participants' First Amendment protected right of free speech. Defendant's allegation that Plaintiff's public participation in **discussion** of debt issues somehow makes him a vexatious litigant are scurrilous, unfounded, casts aspersions upon him, holds him up to false light, and is defamation of Plaintiff's character.

24. Defendant points to the 10-21-2013 call at 7:39 where Mr. Mack allegedly states "I got another settlement check today for 1,600 bucks. That was very nice. I filed a motion to dismiss with the court today and accordingly with that law suit, and while I was there I just decided to go ahead and file another one...."

25. Defendant also points to statements allegedly made by Mr. Mack on the 11-11-13 call where he states at 25:20 ".....with over 20 federal lawsuits filed and I've got two going on now and I've got more waiting."

26. Statements of fact by Mr. Mack as to what he has done or is doing in litigation do not in any way create any inference or factual basis that he is a vexatious litigant unless they state in some manner that litigation or motions were or should be brought for any improper purpose or for harassment which is absolutely not the case in any of Plaintiff's discussions. Defendant has presented not one shred of evidence to the contrary.

27. Factually, Mr. Mack in his discussions with various people including *pro se* litigants and ATTORNEYS who are occasionally on the conference calls, repeatedly states his opinion to all participants that no person should EVER bring a claim that is not founded in law or file a pleading that is done for purposes of harassment or any other improper purpose. In fact, Mr. Mack in regular discussions with various persons consistently admonishes anyone who is considering litigation in any court to be very familiar with the local rules of that court and the Federal Rules of Civil Procedure as well as any state rules of civil procedure that would be relative to any litigation in state courts.

28. It would seem that Progressive or its Counsel have a problem with Mr. Mack exercising his right of free speech as to what he has been doing regarding litigation that he is involved in. The litigation Mr. Mack has been involved in is a matter of public record and all information about the litigation he is or has been involved in is available to anyone who would set up an account on Pacer and do the appropriate searches. Defendant, in Exhibit D, has a number of screenshots from Pacer of the various cases Mr. Mack has filed in the Eastern District of Texas. Two of the cases happen to be ones where Michael J. Scott P.C. is a Defendant but the evidence that the Plaintiff obtained judgments against Michael J. Scott P.C. in both cases is conspicuously absent.

29. Progressive does not make even one specific allegation that Mr. Mack has been found to have brought a frivolous action in any court nor has it presented any evidence whatsoever that any of his complaints have been dismissed for ANY reason other than by his own request. Factually, Mr. Mack has NEVER had a case dismissed by any court other than at

his request or by stipulation with the other party to the litigation as a result of settlement. Mr. Mack has, in fact, defeated a Motion to Dismiss in a case he filed with this Court.[1]

30. There has been only ONE adverse ruling by **any** court against Mr. Mack[2] and that was where summary judgment on statute of limitations grounds was granted with that ruling currently on appeal to the Fifth Circuit. The Court noted in its ruling that there were, in fact, issues of material fact as to the allegations made by Mack and the only grounds for granting the summary judgment was on the statute of limitations issue.[3]

31. Defendant states "Plaintiff's litigious tactics and threats are not limited to the internet" after a rambling diatribe about YouTube videos and other information allegedly present on the internet, some relating to "What Lies in Your Debt" and in doing so attempts to paint a picture that it is Mr. Mack who has put that information on the internet which is patently false, misleading, scandalous and blatantly unfounded. Mr. Mack has made NO threats whatsoever but does freely exercise his right to bring an action, if necessary, against any person who violates his rights especially under the consumer protection statutes.

32. It would seem that the Defendant does not have a fundamental understanding of what the basis is for a *pro se* litigant to be considered vexatious by the court or in the alternative it or its Counsel has brought its motion for an improper purpose and in an unconscionable attempt to intimidate, coerce and harass Mr. Mack as a *pro se* litigant.

33. None of Plaintiff's cases have been found to be frivolous or unfounded by any court.

34. Defendant has failed to show express findings that Plaintiff has filed frivolous lawsuits.

35. Defendant has failed to show express findings that Plaintiff has filed vexatious or harassing lawsuits.

---

[1] *See Mack v. Equable Ascent Financial, LLC*, 4:11CV793 (E.D. Texas 2013)
[2] *See Mack v. Equable Ascent Financial, LLC*, 4:11CV793 (E.D. Texas 2013)
[3] *See Mack v. Equable Ascent Financial, LLC*, 4:11CV793 (E.D. Texas 2013) Doc. 37 pg 5

36. Defendant has failed to show how information on the internet about the Plaintiff not placed there by him constitutes vexatious behavior on the part of the Plaintiff.

37. Defendant has failed to show how or why the posting of a security bond is warranted by the circumstances in this or any other case.

38. Plaintiff does have an objective good faith expectation to prevail in all his actions, based on belief formed after a reasonable inquiry wherein he determined he had a reasonable factual basis for his filings.

39. The Constitution provides for equal access to the courts. All litigants have a constitutionally protected right to have their claims adjudicated according to the rule of precedent.

40. The right to file a lawsuit *pro se* is one of the most important rights under the Constitution and laws of this nation. *Elmore v. McCammon* (1986) 640 F. Supp. 905

41. Defendant has failed to show how or where Plaintiff has caused needless expense to any party or has posed a burden to the courts. In fact, Plaintiff has ALWAYS made attempts to settle a matter without litigation and only initiates a court action as a last resort to remedy.

42. Plaintiff has never been sanctioned by any court.

43. Defendant has failed to show how or why sanctions would be appropriate against the Plaintiff.

44. There can be no sanction or penalty imposed on one because of his exercise of his constitutionally protected rights. *Sherar v. Cullen,* 481 F.2d 946 (1973).

45. Plaintiff brings to the attention of this Court the Federal Trade Commission (FTC) press releases of numerous settlements between debt collectors and the FTC where fines in the millions of dollars have been PAID TO THE GOVERNMENT for violations of consumers'

rights. [*See* Exhibit 2] These settlements are indicative of massive and ongoing violations of the FDCPA and other consumer protection statutes by the debt collection industry.

46. The problem with the settlements with the FTC is that all proceeds of the settlements go to the government rather than to those consumers who were harmed by the actions of those debt collectors and attorneys involved. This practice provides no compensation to those who are victimized by the debt collection industry and its attorneys and obviously has not had an overwhelmingly deterrent effect on the industry. They continue their unsavory and illegal practices as evidenced by very large settlements by some of the largest debt collection companies in the world such as Encore Capital Group and its associated Midland Companies, Expert Global Solutions and its affiliates including NCO Financial, LTD Financial Services, LTD, and Asset Acceptance, LLC to name several while numerous others have been involved in settlements for substantial sums some of which have occurred within just the past few months.

47. Congress, in its infinite wisdom and legislative role, created the FDCPA and other consumer protection statutes to protect consumers from illegal and unconscionable collection activities used by debt collectors and in so doing included a private right of action for consumers to bring suit against those who have violated their rights under those statutes.

48. The intent of Congress was very clear in that it created a private right of action so that consumers could bring actions in the courts to enforce the statutes instead of placing the full burden of enforcement on the back of the government agencies such as the FTC to promote compliance of the debt collection industry under the statutes. This private right of action made it possible for consumers, and especially *pro se* consumers, acting as Private Attorney's General to bring suit for statutory and in some cases actual and punitive damages

to assist in enforcement of the consumer protection statutes. *Grazziano v. Harrison* 950 F.2d 107, 113 (3d. Cir. 1991) "Given the structure of [the FDCPA] ......as a means of fulfilling Congress's intent that the act should be enforced by debtors acting as private attorney's general."

49. Mr. Mack, as in the instant case, has done precisely that where he has identified a number of violations of the consumer protection statutes over the last several years that pertain specifically to him. Mr. Mack has studied the consumer protection statutes and court rules and procedures. While he is no legal expert he can identify violations of the statutes and properly bring an action before the Court complying with the rules and procedures as he has previously demonstrated to this Court. Mr. Mack has at no time brought any frivolous or unfounded suit before any court for any improper purpose. There is no evidence to the contrary that has been brought forth by the Defendant because there simply is none to be found. There is no precise standard to be followed by courts presented with a motion to declare a litigant vexatious. The Ninth Circuit cautioned that such an order "cannot issue merely on a showing of litigiousness." *Moy,* 906 F.2d at 470. At such time that Mr. Mack has no further **legitimate** claims to bring against any person he will be absent from the courts other than for observation and educational purposes.

50. Progressive complains that Mr. Mack mentioned on one of the conference calls that he got a settlement "for 1,600 bucks" as if that was some unconscionable, improper and/or illegal action. The Court knows well that by far the vast majority of civil cases filed in the courts, whether by *pro se* litigants or those who are represented, are settled prior to trial. The courts absolutely do encourage settlement by the parties to a dispute that is brought to litigation so Mr. Mack's settlements are very much in concert with the guidance and desires of the court.

51. Mr. Mack has, in fact, publicly **discussed** strategies for settling cases rather than going to trial but in doing so adheres to any and all provisions of settlement agreements to which he is a party. He exercises his right of free speech in publicly **discussing** such subjects with others. Mr. Mack ALWAYS makes a disclaimer that he is not an attorney and is not giving any kind of legal advice in **discussing** issues with the call participants and that no participant should take anything that he says as legal advice and they should diligently study for themselves rather than rely on what is said on the calls before taking any actions.

52. The FDCPA allows the consumer who proceeds *pro se* in an FDCPA action to obtain statutory and actual damages that are proven when they prevail at trial A consumer that is represented can collect attorney's fees from the Defendant(s) when he prevails in litigation. Under the FDCPA the only time that a Defendant may recover litigation costs from a Plaintiff is when the consumer brings an action in bad faith or for purposes of harassment.

53. In the first ruling of its kind, the Tenth Circuit ruled in the Marx v. General Revenue Corporation case that Marx had to pay more than $4,500 in litigation costs to General Revenue when they prevailed in the case even though the case was brought in good faith.

54. This wrong headed and aberrant decision by the Tenth Circuit is on appeal to the U.S. Supreme Court as it should be, given the importance of this particular case and its potential effect on consumers. The Federal Trade Commission in a press release stated that it along with the Department of Justice and the Consumer Financial Protection Bureau have filed a joint *amicus* brief in the U.S. Supreme Court supporting consumers' ability to protect their rights under the FDCPA by suing debt collectors. [*See* Exhibit 3] They rightfully urge the U.S. Supreme Court to reverse the decision of the Tenth Circuit and preserve the protections for consumers put in place by Congress

55. It should be obvious to this Court that Progressive has brought its motion before the Court for other than legitimate purposes and has, in fact, brought it in bad faith and for an improper purpose. Given the fact that a Defendant cannot recover costs of litigation from a consumer plaintiff whether represented or not when a suit is brought in good faith such as is the case here, how is there ANY excuse for bringing a Motion for Security of Costs in this case with a *pro se* litigant when there has been absolutely no evidence provided of vexatious behavior by Mr. Mack in any of his proceedings before any Court? The reasons for bringing the motion can only be described as frivolous, scurrilous, improper, coercive, unfounded and abusive to name a few adjectives. There is no evidence that this motion was brought in good faith and for a proper purpose.

56. Could bringing this motion be a continuation of unethical behavior by Defense Counsel for an ulterior motive? It would appear that Counsel for Progressive has engaged in unsavory, unprofessional and outright deceptive tactics in other cases to wit: In the matter of Lee v. Credit Mgmnt., LP, CIV.A. G-10-538, the Southern District of Texas admonished Defense Counsel for changing deposition testimony after the close of discovery and for withholding relevant documents and attempting to introduce them after the close of discovery and after voluminous briefing on dispositive motions. In the matter of Green v. IC System, Inc., Cause No. 2009-4059-4, the 170th District Court in and for McLennan County, Texas, admonished Defense Counsel for abusing the discovery process, and noted that Defense Counsel was "sure trying hard not to give [Plaintiff's counsel] any information." In Whatley v. Creditwatch Services, LTD 4:11CV00493 the Eastern District of Texas noted that Defense Counsel has made "much ado about nothing." (Doc. 49) Whether these tactics and the actions of Defense Counsel in bringing what in all respects is a baseless and frivolous

motion are merely an attempt to drive up defense costs is unclear. However, the prejudice that results to Mr. Mack is clear and the waste of valuable and limited resources of the Court is equally clear. How does this make sense when damages claimed amount to only $2,000?

57. Another equally troubling aspect of Defense Counsel's actions is her stated plan to depose Mr. Mack when it should be abundantly clear that all documents relevant to this simple cause of action have been entered as exhibits with Plaintiff's Original and First Amended Complaints. The actions of both parties are clearly articulated in both Complaints. There is no further information to be obtained through deposition that would be relevant to the causes of action in the Complaint. Again, how much sense is this course of action over $2,000?

58. <u>This action has nothing to do with a debt alleged to be owed by Mr. Mack but has everything to do with the manner in which the Defendants attempted to collect it</u> which was done entirely on paper with just several documents and those are clearly shown as exhibits attached to both Complaints and are already a part of the record.

59. The Court should also be aware that this motion was filed with the Court on December 18, 2013, well in advance of the 26f conference which was held on January 10, 2014. It was at that conference that Defense counsel stated she was going to file a motion for bond and stated she assumed Plaintiff was going to oppose the motion which Mr. Mack confirmed at that time. She also made a short comment about Mr. Mack being quite active on the internet. That was the sum total of any conversation regarding the motion.

60. It is obvious that Defense counsel filed the Motion for Security Costs weeks in advance of having any type of conference or discussion with the Plaintiff regarding the motion which is a sanctionable violation of local rule CV-7(h). Progressive also failed to include a Certificate of Conference with its motion and by failing to do so again violated local rule

CV-7(h). Defense counsel also failed to mail a copy of the motion to Mr. Mack as required by FRCP 5 so he was unaware the motion had been filed until he received an Order from the Court on or about January 24, 2014 directing him to respond to the motion by February 11, 2014. Plaintiff believes it is obvious the above noted actions and inactions were deliberate.

61. It would appear there may be any number of reasons why this motion was filed with none of them being legitimate, forthright or in any manner in good faith. There is absolutely no evidence whatsoever brought forth by the Defendant of vexatious behavior on the part of the Plaintiff in this case or any other. The Court should take a very close look at what appears to be sanctionable conduct on the part of Defense counsel in bringing this motion in bad faith and consider taking appropriate action to deter any similar future activity.

WHEREFORE, because the Defendant has not shown any evidence there is any vexatious behavior in or surrounding any cases the Plaintiff has brought before this or any other court, it should be obvious to the Court the Motion for Security of Costs under LR CV-65.1(b) was brought for improper purposes, in bad faith and in violation of local rule CV-7(h) and the Court should enter an Order that the Motion is DENIED.

Respectfully Submitted,

David E. Mack
7720 McCallum Blvd. #2099
Dallas, Texas 75252
972-735-9642
mack2001@swbell.net

## CERTIFICATE OF SERVICE

This is to certify a true and correct copy of the foregoing document was sent to the below named party by first class USPS mail.

Dated: February 5, 2014

_____
David E Mack

ROBBIE MALONE, P.L.L.C.
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas 75231