# Debt Collectors Agree to Settle With FTC

**Company Used Misrepresentations and False Threats**

For Release
July 5, 2006

A debt collection agency that allegedly used lies and threats to collect debts has agreed to settle Federal Trade Commission charges that its tactics violated federal laws. Under the court settlement, the company agreed to a $150,000 judgment and to refrain from illegal practices when collecting debts, including "time-barred" debts – debts so old they are no longer legally enforceable.

The government's complaint alleges that Whitewing Financial Group, Inc. bought and attempted to collect on very old debts, many of which were beyond statutory limitations and too old to appear on credit reports, and many of which had been discharged in bankruptcy. As required by law, Whitewing sent "validation notices" informing consumers of their right to dispute the alleged debts, but its statements in phone calls allegedly often contradicted those notices. The statements pressured consumers to make payments before they had received the validation notice, and confused them about their rights, including who had the burden of establishing the validity of the debt. Under the Fair Debt Collection Practices Act (FDCPA), if a consumer disputes all or part of a debt in writing within 30 days of receiving a validation notice, the debt collector must cease collection efforts until it has provided the consumer with written verification of the debt.

The complaint alleges that, because there is no legitimate method to enforce payment of time-barred debts, the defendants often misrepresented the status of the debts, leading people to believe that legal proceedings had begun, that lawsuits to collect debts were not time-barred, or that the defendants had documents showing that the debts were valid when, in fact, they did not. The complaint also alleges that the defendants misrepresented that if the consumer did not pay the debt, the defendants would take actions that they never intended to take, such as reporting the debts to credit bureaus or initiating legal proceedings.

Whitewing, based in Houston, Texas, and co-defendants Christopher B. Badger, Lynda J. Badger, and Jon P. Badger are charged with violating the FDCPA and the FTC Act by, among other things, misrepresenting the character, amount, or legal status of debts, threatening to take actions that cannot legally be taken or that are not intended to be taken, using false representations or deceptive means to collect or attempt to collect debts or to obtain informationconcerning a consumer, contradicting the notification of consumer rights contained in the validation notice, and communicating with consumers without prior consent or court permission, at times or places the defendants knew or should have known were inconvenient for the consumer, such as their work place.

All but $30,000 of the $150,000 judgment has been suspended based on the defendants' inability to pay. The Commission vote to refer the complaint and proposed consent decree to the

**Exhibit 2**

# Nationwide Debt Collector Will Pay $1.3 Million to Settle FTC Charges

For Release
November 6, 2007

A Texas-based debt collection company will pay more than $1.3 million to settle Federal Trade Commission charges that it misled, threatened, and harassed consumers in violation of federal law.

"Debt collectors who get complaints from consumers should not only take notice, but also take action," said Lydia B. Parnes, Director of the FTC's Bureau of Consumer Protection. "The message from this case is clear: Either comply with the law or face stiff penalties."

According to an FTC complaint, in many instances, collectors for LTD Financial Services, L.P., which collects on about 1.25 million consumer accounts per year, violated the FTC Act and the Fair Debt Collection Practices Act by falsely threatening or implying that LTD would garnish consumers' wages, seize or attach their property, or initiate lawsuits or criminal actions against them if they failed to pay.

LTD collectors, who collect in English and Spanish, allegedly called consumers at their place of work despite knowing it was inconvenient for them to receive calls there, and disclosed the existence of debts to family members, employers, co-workers, and neighbors. They also allegedly harassed consumers and used abusive tactics such as immediately calling back after consumers hung up on them, and sometimes used racial slurs and profanity. According to the complaint, in some instances, front-line supervisors and mid-level managers either participated or were aware of such practices under their supervision but failed to impose sufficient discipline.

Hundreds of consumer complaints against LTD are filed with the FTC, the Houston Better Business Bureau (BBB), various state attorneys general, and the company itself, the FTC's complaint states, noting that LTD's response to complaints "is cavalier at best," that complaints from attorneys general and the BBB alleging egregious law violations frequently are dismissed without significant investigation, and that collectors often go unpunished or merely receive a warning. The complaint also alleges that LTD's internal compliance program regularly catches collectors violating federal law, but even multiple egregious violations often go without serious punishment, and that senior managers either turn a blind eye to the unlawful acts or fail to exercise the supervision necessary to recognize the problems.

Under the proposed settlement, LTD will pay a $1.375 million civil penalty. In addition, LTD and its owners, Timothy Feldman and Leonard Pruzansky, and its top managers, John Brewster and Derrek Davis, are permanently prohibited from misrepresenting to consumers that nonpayment of a debt will result in garnishment of wages, seizure or attachment of property, or lawsuits. They also are permanently barred from using false, deceptive, or misleading representations in connection with the collection of any debt, communicating with a consumer at

# Bear Stearns and EMC Mortgage to Pay $28 Million to Settle FTC Charges of Unlawful Mortgage Servicing and Debt Collection Practices

For Release
September 9, 2008

The Bear Stearns Companies, LLC and its subsidiary, EMC Mortgage Corporation, have agreed to pay $28 million to settle Federal Trade Commission charges that they engaged in unlawful practices in servicing consumers' home mortgage loans. The companies allegedly misrepresented the amounts borrowers owed, charged unauthorized fees, such as late fees, property inspection fees, and loan modification fees, and engaged in unlawful and abusive collection practices. Under the proposed settlement they will stop the alleged illegal practices and institute a data integrity program to ensure the accuracy and completeness of consumers' loan information.

"Like other companies that send a bill, mortgage servicers must make sure that the amount they say is due really is the amount due," said Lydia B. Parnes, Director of the FTC's Bureau of Consumer Protection. "Consumers have the right to expect accuracy from the company that collects their mortgage payments."

As stated in the FTC's complaint, Bear Stearns and EMC have played a prominent role in the secondary market for residential mortgage loans. During the explosive growth of the mortgage industry in recent years, they acquired and securitized loans at a rapid pace, but they allegedly paid inadequate attention to the integrity of consumers' loan information and to sound servicing practices. As a result, in servicing consumers' loans, they neglected to obtain timely and accurate information on consumers' loans, made inaccurate claims to consumers, and engaged in unlawful collection and servicing practices. These practices occurred prior to JP Morgan Chase & Co.'s acquisition of Bear Stearns, which became effective on May 30, 2008.

According to the complaint, EMC is the mortgage servicer for many of the loans Bear Stearns and EMC acquired. Many of these loans are subprime or "Alt-A" (less than prime) loans, including nontraditional mortgages such as pay option adjustable rate mortgages ("pick-a-payment" loans), interest-only mortgages, negative amortization loans, and loans made with little or no income or asset documentation. EMC's loan servicing portfolio has grown significantly in recent years; as of September 2007, it serviced more than 475,000 mortgage loans with a total unpaid balance of about $80 billion.

# Debt Collectors Will Pay More Than $1 Million to Settle FTC Charges

## Claimed Debts Were Owed Despite Consumers Disputes

For Release
March 3, 2010

A nationwide debt collector has agreed to pay a civil fine of more than $1 million to settle Federal Trade Commission charges that it violated federal law by inaccurately reporting credit information and pressing consumers to pay debts they often did not owe.

According to the FTC's complaint, the company and two of its officers illegally tried to collect invalid debts and reported them to the credit reporting agencies without noting that consumers disputed them. In addition, even after receiving information from consumers that a debt was paid off or did not belong to the consumer, the company continued to assert, no longer with a reasonable basis, that the consumer owed the debt, without trying to confirm or dispute the consumer's information, in violation of the FTC Act.

The FTC charged that the company, Credit Bureau Collection Services, and two of its officers, Larry Ebert and Brian Striker, violated the FTC Act and the Fair Debt Collection Practices Act. The company also is charged with violating the Fair Credit Reporting Act by reporting information to credit agencies that consumers had proved was inaccurate, failing to inform the credit agencies that consumers had disputed the debts, and failing to investigate after receiving a notice of dispute from a credit reporting agency.

In addition to imposing the $1.1 million civil penalty on the company, the settlement order:

- Bars the defendants from further violations;
- Prohibits them from making unsupported statements to collect a debt or obtain information about a consumer;
- Bars them from making claims that a debt is owed or about the amount, without a reasonable basis;
- Requires the defendants, when a debt is questionable or a consumer questions it, to either close the account and end collection efforts or investigate the dispute. If they cannot show that the consumer owes a debt, they cannot sell the debt or provide it to any business other than the original client; and
- Bars the company from re-reporting information to credit reporting agencies that it had voluntarily deleted from credit reporting before December 2008.

The Commission vote to authorize staff to refer the complaint and consent decree to the Department of Justice for filing was 4-0. The documents were filed in the U.S. District Court for the Southern District of Ohio, Eastern Division.

# Debt Collector Will Pay $1.75 Million to Settle FTC Charges

### Ignored Consumers Disputes Without Checking Its Information for Accuracy

For Release
October 21, 2010

To resolve Federal Trade Commission charges, one of the nation's largest debt collectors will pay $1.75 million for allegedly making repeated telephone calls to collect from the wrong person, to collect the wrong amount, or both. The settlement is the second largest civil penalty obtained by the FTC in a debt collection case.

"Debt collectors had better make sure their information is accurate, or they could end up paying a big penalty," said David Vladeck, Director of the FTC's Bureau of Consumer Protection. "There is no excuse for trying to collect debt from someone if you can't confirm that they actually owe it."

According to the FTC's complaint, between 2006 and at least 2008, Allied Interstate, Inc. continued collection efforts even after consumers told the company they did not owe the debt, without verifying the accuracy of the disputed information. Allied is a Minnesota corporation that works out of offices in the United States, Canada, India, and the Philippines. The company also allegedly made improper harassing phone calls to consumers, using abusive language or calling many times a day for weeks or months, sometimes hanging up when the calls were answered. In addition, the complaint charges that Allied made repeat calls to third parties seeking to locate a consumer, revealed alleged debts to third parties without the consumers' consent or court permission, and threatened legal action against consumers it did not intend to take. The complaint alleges that these practices violated the Fair Debt Collection Practices Act and Section 5 of the Federal Trade Commission Act.

In addition to the monetary penalty, the proposed consent decree requires Allied to take specific steps whenever (1) a consumer disputes that he or she owes the debt or the amount of the debt, or (2) a reasonable person would consider the information on which Allied is relying to collect the debt to be implausible, facially unreliable, or missing essential information. In either circumstance, Allied must either close the account and end collection efforts or suspend collection until it has conducted a reasonable investigation and verified that its information about the debt is accurate and complete. If Allied cannot substantiate that the consumer owes the debt, the company cannot sell the debt or provide it to any business other than the client from which it obtained the debt.

The consent decree also bars Allied from:

- Making false statements to collect a debt or obtain information about a consumer;
- Making claims that a debt is owed or about the amount without a reasonable basis;

# Leading Debt Collector Agrees to Pay Record $2.8 Million to Settle FTC Charges

For Release
March 16, 2011

A leading debt collection company has agreed to pay a civil penalty of $2.8 million to settle Federal Trade Commission charges that its aggressive collection techniques violated federal law. As part of its efforts to protect consumers affected by the struggling economy, the FTC alleged that West Asset Management, Inc. violated the FTC Act and Fair Debt Collection Practices Act.

According to the FTC's complaint, thousands of consumer complaints have been filed against West Asset Management Inc., which employs 1,500 debt collectors in 13 states and one offshore location. West Asset Management debt collectors allegedly violated the Fair Debt Collection Practices Act by calling consumers multiple times each day, often regarding accounts that did not belong to them, and sometimes using rude and abusive language. The FTC further charged that West Asset Management also illegally disclosed the existence of consumers' debts to third parties and ignored consumers' written demands that West Asset Management stop calling them.

The company also allegedly withdrew funds from consumers' bank accounts or charged their credit cards without consent and falsely claimed that consumers would be sued, arrested, or have their property seized for nonpayment of their debt. In addition, the FTC alleged that West Asset Management falsely claimed that partial payments would be accepted as full settlement on accounts and that negative information would stay on consumers' credit reports until debts were paid. According to the complaint, West Asset Management has collected on more than 24 million accounts on behalf of clients in the healthcare, telecommunications, consumer credit, and government service industries.

The settlement imposes a $2.8 million civil penalty, which is the largest civil penalty obtained by the FTC in a debt collection case. The settlement order permanently prohibits West Asset from using false, deceptive or unfair debt collection tactics, including:

- Misrepresenting itself as a law firm or that its collectors are attorneys;
- Misrepresenting that debtors will be arrested or have their property seized if they don't pay;
- Threatening actions that would be illegal, or actions that the company has no intention of taking;
- Making false statements to collect a debt or obtain information about a consumer;
- Withdrawing funds from consumers' bank accounts or charging their credit cards without their consent;
- Depositing postdated checks before the date on the check, or threatening to do so;
- Revealing to third parties that a consumer owes a debt;

# Under FTC Settlement, Debt Buyer Agrees to Pay $2.5 Million for Alleged Consumer Deception

### Firm Also Will Notify Consumers with "Time-Barred" Debt That It Will Not Sue to Collect

For Release
January 30, 2012

One of the nation's largest consumer debt buyers has agreed to pay a $2.5 million civil penalty to settle Federal Trade Commission charges that it made a range of misrepresentations when trying to collect old debts. In addition, the company, Asset Acceptance, LLC, has agreed to tell consumers whose debt may be too old to be legally enforceable that it will not sue to collect on that debt.

The proposed settlement order resolving the agency's charges also requires that when consumers dispute the accuracy of a debt, Asset Acceptance must investigate the dispute, ensuring that it has a reasonable basis for its claims the consumer owes the debt, before continuing its collection efforts. The proposed order also bars the company from placing debt on consumers' credit reports without notifying them about the negative report. The U.S. Department of Justice filed the proposed settlement order this week at the FTC's request.

"Most consumers do not know their legal rights with respect to collection of old debts past the statute of limitations," said David Vladeck, Director of the FTC's Bureau of Consumer Protection. "When a collector tells a consumer that she owes money and demands payment, it may create the misleading impression that the collector can sue the consumer in court to collect that debt. This FTC settlement signals that, even with old debt, the prohibitions against deceptive and unfair collection methods apply."

The FTC's action – alleging that Asset Acceptance violated the FTC Act, the Fair Debt Collection Practices Act, and the Fair Credit Reporting Act – is part of the FTC's continuing efforts to protect consumers adversely affected by the struggling economy. The agency today also issued a new publication for consumers, "Time-Barred Debts: Understanding Your Rights When It Comes to Old Debts".

Michigan-based Asset Acceptance buys unpaid debts from credit originators such as credit card companies, health clubs, and telecommunications and utilities providers, as well as other debt buyers, and attempts to collect them. Asset Acceptance has purchased tens of millions of consumer accounts for pennies on the dollar. It targets accounts that other collectors have pursued and are more than a year past due, and in some cases attempts to collect debt that is more than 10 years old. Some of this debt is too old to be legally enforceable – state statutes of limitations cut off the right to sue to collect the debt after some period of time has passed,

# Debt Collectors Settle with FTC, Agree to Stop Deceiving and Abusing Consumers

## Consumers Were Subjected to Collection Efforts for Magazine Subscription Debts They Did Not Owe, FTC Alleges

For Release
May 15, 2012

Defendants in a debt collection operation that allegedly sought payment for bogus magazine subscription debts have settled with the Federal Trade Commission.

The FTC alleged in its complaint that the defendants knew, or should have known, that some of the magazine subscription debts they were collecting were not valid. The defendants, who handle collection of hundreds of thousands of accounts each year, violated the FTC Act, the Fair Debt Collection Practices Act, and the Telemarketing Sales Rule, according to the complaint.

The proposed settlement order, filed by the Department of Justice on the FTC's behalf, bars Luebke Baker and Associates, Inc., Kevin Luebke, and other defendants from representing that a consumer owes a debt without having a reasonable basis to do so, and from making any other misrepresentations when collecting debts or selling goods and services. It also requires the defendants to conduct a reasonable investigation when a consumer disputes a debt or when the defendants otherwise have reason to question whether the debt is valid.

Under the proposed settlement order, when the defendants attempt to collect debts, they must provide consumers with disclosures about their rights under the Fair Debt Collection Practices Act. The proposed order also requires the defendants to inform their collection employees of their personal obligations under the Act.

The Luebke defendants allegedly collected on debts for magazine subscriptions despite the fact that the FTC had successfully sued the company that originally sold the magazine subscriptions for deceptive marketing. The defendants were notified of a 2003 federal court order against Cross Media Marketing Corp. that placed special requirements on anyone attempting to collect payment for these magazine subscriptions.

The FTC alleged that the Luebke defendants ignored these requirements and repeatedly told consumers the debts were due and payable.

The complaint also alleges that the Luebke defendants:

- illegally masked their identity and sent false information over caller ID, falsely posing as Ed McMahon, attorneys from a law firm, and other entities;
- falsely told consumers that magazine subscription debts are exempt from the statute of limitations; and

# In Settlement with FTC, Debt Collectors Agree to Stop Deceiving Consumers and Pay Nearly $800,000

## Consumers Allegedly Were Tricked into Paying Unnecessary Fees and Falsely Threatened with Legal Action

For Release
March 26, 2013

After allegedly misleading consumers into paying unnecessary fees and falsely threatening consumers with lawsuits, defendants in a debt collection operation have agreed to settle Federal Trade Commission charges.

The FTC alleged in its complaint that the defendants – a debt buyer and a debt collection law firm, both based in Mississippi – violated the FTC Act and the Fair Debt Collection Practices Act by deceptively charging consumers a fee for payments authorized by telephone. According to the FTC, the defendants led consumers to believe that the fee was unavoidable when, in fact, those who paid by mail or online did not incur the fee. The FTC also alleged that the companies violated the laws by falsely threatening to sue consumers as a means of getting them to pay. A debt collector is prohibited by law from using false, deceptive, or misleading representations or tactics when collecting a debt.

Under the terms of the proposed settlement, the defendants will pay $799,958 in restitution for consumers. The defendants also are barred from making any misrepresentations when collecting a debt, including false claims that consumers must pay an extra fee when making payments on a debt or that they will be sued for not paying a debt.

According to the complaint, debt buyer Security Credit Services, LLC, and Jacob Law Group, PLLC have worked together since 2006 to collect debts nationwide. Security Credit buys consumer debt accounts, and contracts with Jacob Law to collect on them. The complaint alleges that Jacob Law called and pressured consumers to immediately make payments on their debts by authorizing electronic checks or credit or debit card payments over the phone. Jacob Law allegedly told consumers they were required to pay an additional fee of $18.95 for this service, but routinely failed to mention that they could avoid the fee by mailing the payment or paying online. Since 2008, the defendants have collected at least $799,958 in fees from consumers.

The FTC also alleged that Jacob Law Group implied that it would file lawsuits to collect the debts even when it did not intend to do so.

The Commission vote authorizing the staff to file the complaint and approving the proposed consent decree was 4-0. The FTC filed the complaint in the U.S. District Court for the Northern District of Georgia, Atlanta Division, on March 13, 2013, and has submitted the proposed consent decree to the court for approval.

# World's Largest Debt Collection Operation Settles FTC Charges, Will Pay $3.2 Million Penalty

## Largest Civil Penalty Ever Obtained by the FTC Against a Third-party Debt Collector

For Release
July 9, 2013

The world's largest debt collection operation, Expert Global Solutions and its subsidiaries, has agreed to stop harassing consumers with allegedly illegal debt collection calls and to pay a $3.2 million civil penalty – the largest ever obtained by the Federal Trade Commission against a third-party debt collector.

In its complaint, the FTC charged that the companies violated the Fair Debt Collection Practices Act and the FTC Act by using tactics such as calling consumers multiple times per day, calling even after being asked to stop, calling early in the morning or late at night, calling consumers' workplaces despite knowing that the employers prohibited such calls, and leaving phone messages that disclosed the debtor's name, and the existence of the debt, to third parties. According to the FTC's complaint, the companies also continued collection efforts without verifying the debt, even after consumers said they did not owe it.

Under the proposed order, whenever a consumer disputes the validity or the amount of the debt, the defendants must either close the account and end collection efforts, or suspend collection until they have conducted a reasonable investigation and verified that their information about the debt is accurate and complete. The proposed order also restricts situations in which the defendants can leave voicemails that disclose the alleged debtor's name and the fact that he or she may owe a debt.

Also under the proposed order, the defendants must: stop falsely representing that they will not call a number to collect a debt; not harass, oppress, or abuse a consumer while attempting to collect a debt; not communicate with third parties about a consumer's debt; not communicate with a consumer at his or her workplace if it is clearly inconvenient or prohibited by the consumer's employer; except in limited circumstances, cease communications if a consumer has requested no further contact or if a consumer refuses to pay a debt; and not violate any provision of the Fair Debt Collection Practices Act. The defendants also are required to record at least 75 percent of all their debt collection calls beginning one year after the date of the order, and retain the recordings for 90 days after they are made.

With more than 32,000 employees and revenues in 2011 of more than $1.2 billion, the Texas-based Expert Global Solutions and its subsidiaries – ALW Sourcing, LLC; NCO Financial Systems, Inc.; and Transworld Systems, Inc., which also does business as North Shore Agency,

# FTC: $1M settlement in debt collection scam

## FTC: Bogus debt collection operation leads to $1M settlement with federal gov't

WASHINGTON (AP) -- A debt collection operation that involved text messages and collectors allegedly posing as attorneys has led to a $1 million settlement with the federal government.

The Federal Trade Commission said Wednesday that a debt collector in Glendale, Calif., agreed to pay the civil penalty in order to settle FTC charges. The commission alleged that Archie Donovan and two companies he controls — National Attorney Collection Services, Inc. and National Attorney Services LLC — used text messages and phone calls, and failed to disclose that they were debt collectors, which is against the law.

In their messages, the collectors used their company names or variations of it to lead consumers to believe an attorney was contacting them, the FTC said. They also falsely threatened to sue consumers for not paying debts or to garnish their wages, and they illegally revealed debts to the consumers' family members, friends and co-workers, said the commission.

A call to Donovan seeking comment was not immediately returned.

A mailing from Donovan and his companies, the FTC said, used envelopes with a picture of a large arm shaking money from a consumer who is depicted upside down, with cash falling from his pockets. According to the commission, mailing envelopes can only include the name and address of the company and may not indicate that the consumer may owe a debt.

As part of the settlement, Donovan and his companies are barred from sending texts that do not include disclosures about their identity. They also need a consumer's consent before they can send them a text.