## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| DAVID MACK, | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:13-CV-00544 |
| | § | |
| PROGRESSIVE FINANCIAL | § | |
| SERVICES, INC. | § | |
|    Defendant. | § | |

## DEFENDANT PROGRESSIVE FINANCIAL SERVICES, INC.'S OBJECTIONS TO REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

COMES NOW, Progressive Financial Services, Inc. ("Progressive"), and files its Objections to the Report and Recommendation of United States Magistrate Judge and would respectfully show unto the Court as follows:

## I.
## BACKGROUND

1.      On October 27, 2014, this Court issued an order partially denying and partially granting Progressive's Motion for Summary Judgment. Doc. 37. Progressive's position is that the Magistrate ruled incorrectly on a key issue. In the interest of efficiency before this Court, Progressive renews its original Motion for Summary Judgment in its entirety, and files the following objections to the Magistrate Judge's recommendations.

2.      The underlying facts in this case are that Plaintiff asked Progressive for verification—Progressive provided him the verification provided to it by its client, the City of Dallas. When Plaintiff continued questioning the debt and verification, Progressive chose to walk away from the account, as is their right to do so and is in the interest of public policy and the FDCPA.

## II.
## ARGUMENT AND AUTHORITIES

**A.    Standard of Law**

3.    Within fourteen (14) days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. Fed. R. Civ. P. 72(b)(3). "[T]he district court has wide discretion to consider and reconsider the magistrate judge's recommendation*." Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 862 (5th Cir. 2003) (quoting *Freeman v. County of Bexar*, 142 F.3d 848, 852 (5th Cir. 1998)).

**B.    The Court's Report and Recommendation Goes Against the Congressional Intent of FDCPA § 1692g(b).**

FDCPA 1692g(b) states:

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

4.    15 U.S.C. §1692g(b). The legislative history on this provision simply states "[t]his provision will eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S. Rep. No. 95-382, at 4

(1977), *reprinted in* 1977 U.S.S.C.A.N. 1695, 1699. Taking from the legislative history, the simple goal of having a debt collector provide a consumer with "verification" of the debt is to give the consumer enough information to determine if the collector is attempting to collect from the wrong person, or that the consumer has already paid the debt sought. *Id*.

5.      However, in the case at hand, the Court exceeded the bounds of the language of 15 U.S.C. § 1692g(b) and the legislative intent by following the case of *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, and denying Progressive's Motion for Summary Judgment.No. 13-2026(6th Cir. July 16, 2014). The *Haddad* court stated:

> The verification provision must be interpreted to provide the consumer with notice of how and when the debt was originally incurred or other sufficient notice from which the consumer could sufficiently dispute the payment obligation. This information does not have to be extensive. It should provide the date and nature of the transaction that led to the debt, such as a purchase on a particular date, a missed rental payment for a specific month, a fee for a particular service provided at a specified time, or a fine for a particular offense assessed on a certain date.

*Id*. This goes well beyond the language and legislative intent on FDCPA §1692g(b). In fact, the *Haddad* court rewrites the statute.

6.      The evidence demonstrates Progressive complied with the clear statutory language of FDCPA §1692g(b). Doc. 35-1 at 9-10. Progressive obtained the validation from the original creditor, the City of Dallas, and sent it to Plaintiff. The evidence further demonstrates Progressive's validation achieved Congress' intent for this section, as Plaintiff determined he was not aware of any debt owed to the City of Dallas. Doc. 35-1 at 4. Since the finding that Progressive is not entitled to summary judgment on Plaintiff's FDCPA §1692g(b) is contrary to the plain language of the provision and Congress' intent with the provision, this Court should sustain Progressive's objection to the Report and Recommendation.

**C.      No Genuine Issue of Fact Remains Under Plaintiff's FDCPA §1692g(b) Claim as He Was Provided Information to Sufficiently Dispute the Debt.**

7.      In the case at hand, the evidence shows Progressive ceased collection on the account, requested and received verification of the debt from the City of Dallas, and forwarded the copies of the account detail to Plaintiff. Doc. 35-1 at 9-10. ("The attached information has been provided by the creditor to validate the existence and/or accuracy of the debt [X] copies of account detail"). The account notes give a date, the type of service, water, an amount, and a total amount suspensed as well has his name, an address which may be his, may be a rental property of his, or may be a completely unknown address to him. This provides him with ample information to determine whether he believes the debt is his, or is not his. According to Plaintiff's affidavit, he "was not able to discern or understand what any amount alleged to be due by him was for or when the alleged obligation may have been incurred…" and "was not aware of ANY debt owed to the City of Dallas or Penn Collection Agency." Doc. 35-1 at 4. As plaintiff states, he was not aware of any debt owed to the City of Dallas, which Progressive states in the letter is the original creditor, therefore, the validation sent by Progressive gave Plaintiff ample evidence for him to dispute the debt. Doc. 35-1 at 4. As the Court chose to adopt the *Haddad* case which states the verification provision has to ether 1) provide the consumer with notice of how and when the debt was original incurred **or** 2) provide **sufficient notice from which the consumer could sufficiently dispute the payment obligation**. *Haddad*,No. 13-2026. Here, according to Plaintiff's affidavit, the verification sent by Progressive gave Plaintiff sufficient notice allowing him to dispute the payment obligation as he did not understand what amount was due by him, what it was for, and was not aware of any debt owed to the original creditor, the City of Dallas. Doc. 35-1 at 4. Instead of disputing the debt with Progressive or the City of Dallas, Plaintiff chose to sue instead. Because Plaintiff was given enough information to dispute the

**DEFENDANT PROGRESSIVE FINANCIAL SERVICES, INC.'S OBJECTIONS TO REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** – Page 4

debt, no genuine issue of fact remains on whether or not Progressive provided proper verification

under 15 U.S.C. § 1692g(b).

**D.      Case law Holds There is No Violation of FDCPA § 1692g(b) Because Progressive Ceased Collection Activity.**

8.      Progressive is entitled to summary judgment under Plaintiff's FDCPA § 1692g(b) claims

because it ceased collection on the account when it received Plaintiff's request for verification.

The Northern District of Texas has stated "[a] debt collector therefore does not violate §

1692g(b) if it ceases all collection activities. *Hunsinger v. SKO Brenner American, Inc.*, Civil

Action No. 3:13-cv-0988-D (citing *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 940 (9th

Cir. 2007)). The Seventh Circuit has opined on this provision as well when it joined the Sixth

Circuit's position stating"Section 1692g(b) thus gives debt collectors two options when they

receive requests for validation. They may provide the requested validations and continue their

debt collecting activities, or they may cease all collection activities." *Jang v. AM Miller and

Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997) (citing *Smith v. Transworld Systems, Inc.*, 953 F.2d

1025, 1031 (6th Cir. 1992). The *Jang* court then provided some valuable insight applicable to the

facts at hand:

> The statute wisely anticipates that not all debts can or will be verified. After all, in the real world, creditors and debt collectors make mistakes, and sometimes initiate collection activities against persons who do not owe a debt. When a collection agency cannot verify a debt, the statute allows the debt collector to cease all collection activities at that point without incurring any liability for the mistake.

*Id*. While the scenarios discussed in this case do not apply here, the necessity of interpreting the

statute to allow the debt collector to cease all collection activities without incurring any liability

is critical. Here, Progressive provided the validation of the debt provided by the original creditor.

If said validation is not enough in either the debtor's or the Court's opinion, Progressive should

not, and cannot be liable for that, especially when it does not even attempt to collect the debt after the request for validation was received. There may be argument that if a debt collector attempts to collect a debt after providing validation which the debtor says is not enough, but that is not the case here. Progressive did not attempt to collect the debt at any time after receiving the request for validation and cannot be held liable under the FDCPA. Progressive's Objection to the denial of summary judgment must be sustained.

9.      Another case providing great insight on how Progressive's actions could not be a violation of the FDCPA is *Sambor v. Omina Credit Servs., Inc.* Similar to *Jang*, when the plaintiff in *Sambor* disputed the debt, the collector ceased collection and returned the account to the creditor. 183 F. Supp.2d 1234, 1236-37 (D. Haw. 2002). A critical point the *Sambor* court made was the following:

> Because Omnia "ceased collecting the alleged debt, Omnia did not violate the FDCPA by failing to verify Sambor's debt. To hold otherwise, as Sambor would have this court do, would lead to liability under the FDCPA every time a debt collector could not verify a debt. For example, if a credit card company referred an outstanding account to a debt collector and then the credit card company had a fire that destroyed its records, under Sambor's reasoning, the debt collector would violate the FDCPA because it could never send validation of the disputed debt to the consumer, even if the consumer did, in fact, owe the money. As a result, under Sambor's reasoning, a debt collector would essentially have to verify the debt prior to its initial communication with the debtor. Had Congress intended this, Congress would have so stated in the FDCPA.

*Id*. at 1242-43. The case at hand, in Plaintiff's opinion, falls into the category contemplated by the *Jang* court, one which according to the debtor seemingly cannot be validated. In order to appease Plaintiff, Progressive would have had to verify the debt prior to its initial communication with him, which was not the intent of Congress and is not a requirement under the FDCPA. Progressive cannot be held liable under FDCPA § 1692g(b) for ceasing collection on the debt, providing the only available validation of the debt, and then returning the account to

the original creditor when Plaintiff demanded more validation than the FDCPA requires, and more validation than was available.

**E.      Many Courts have Not Held Debt Collectors to the Sky High Standard of *Haddad* for FDCPA § 1692g(b) Compliance.**

10.      Holding Progressive and any other collection agency to the standard expressed in *Haddad* is against the underlying purpose of the § 1692g(b) provision of the FDCPA and public policy in general. As previously stated, the legislative history simply states § 1692g(b) is to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S. Rep. No. 95-382, at 4. Prior courts to the *Haddad* ruling have held less stringent standards as well. The Eleventh Circuit in *Azar v. Hayter*, 874 F. Supp. 1314,  held "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt." 874 F. Supp. 1314, 1317 (N.D. Fla.). *aff'd*, 66 F.3d 342 (11th Cir. 1999), *cert. denied*, 516 U.S. 1048 (1996). The Fourth Circuit then adopted this in *Chaudhry v. Gallerizzo* to hold that the verification requirements under 15 U.S.C. §1692g(b) were met where the debt collector "forwarded a copy of the [creditor]'s computerized summary of the Chaudhry's loan transactions… includ[ing] a running account of the debt amount, a description of every transaction, and the date on which the transaction occurred." 174 F.3d 394, 406 (4th Cir. 1999).[1] The Third Circuit also takes a less stringent approach as it held that a debt collector satisfied the verification requirement, because "[t]he computer printouts provided to [the debtor] were sufficient to inform him of the amounts of his debts, the services provided, and the dates on which the debts were incurred." *Graziano v.*

---

[1] In the case at hand, Progressive forwarded a copy of the creditor's computerized summary as well, however, what the original creditor provided, which was outside the control of Progressive, was not a detailed as in the *Chaudhry* case. As such, Progressive chose to cease collection on the account and return the account to the City of Dallas.

**DEFENDANT PROGRESSIVE FINANCIAL SERVICES, INC.'S OBJECTIONS TO REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** – Page 7

*Harrison*, 950 F.2d 107, 113 (3d Cir. 1991). Last, the Eighth Circuit held the verification requirement was satisfied where the debtor "could sufficiently dispute the payment obligation." *Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1004 (8th Cir. 2011).[2]

11.     There is no evidence before this Court that the information provided to Plaintiff does not accomplish this purpose. The material Progressive provided Plaintiff states the original creditor as the City of Dallas, the document contains Plaintiff's own name, an address to which he could either confirm or deny is an address he has lived at, has a rental property, *et cetera* to determine whether the debt could be his, the services, water, that was provided, one typically associated with municipalities, and an amount. Doc. 35-1 at 9-10. This gave Plaintiff enough information to reasonably determine whether or not Progressive was collecting from the wrong person, or whether he had already paid the City of Dallas for water services, which was the goal Congress had in mind with this provision. Plaintiff's own affidavit actually confirms Congress' goal was achieved by his statement that "Affiant was not aware of ANY debt owed to the City of Dallas or Penn Collection Agency." Doc. 35-1 at 4. Therefore, the information provided by Progressive gave Plaintiff enough information for him to conclude he was not aware of any debt, and therefore could have moved to the next logical step after verification, disputing the debt, rather than demanding more verification. This Court should sustain Progressive's objection.

12.     Rather than taking the position Progressive was attempting to collect from the wrong person or whether he could recognize the address on the information provided, or state that he believes he does not owe the amount, he chooses to demand more information without contesting possibly owing the debt. Then, Plaintiff turns to the FDCPA, which he has ample experience with, and threatens to sue Progressive if it does not provide verification to his standard, not to the

---

[2] Here, Progressive's position is that it meets this standard laid out in *Dunham* and other cases as Plaintiff is apparently able to dispute the debt, but instead chooses to demand more "verification" as opposed to contesting the underlying debt.

**DEFENDANT PROGRESSIVE FINANCIAL SERVICES, INC.'S OBJECTIONS TO REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** – Page 8

legislative history or prior case law to *Haddad*. To alleviate all of this, Progressive chose to simply return the account to the City of Dallas rather than fighting the uphill battle of finding "verification" to Plaintiff's standard.

13.     Furthermore, it is against public policy to hold Progressive violated the FDCPA by providing Plaintiff with everything the original creditor provided it and when it did not subjectively satisfy Plaintiff, cease collection and return the account to the creditor. If it becomes a violation of the FDCPA for a debt collector to not subjectively provide a debtor with enough "verification" to ascertain whether or not the debt is theirs or they have already paid it, a collector would end up investing so much time into the account, their collection actions may never cease due to that investment of resources and manpower. If a debtor keeps subjectively saying the provided verification is not enough, it gives them

**F.      The Facts at Hand are Distinguished from *Haddad* as the Plaintiff in *Haddad* actually disputed a charge on the account.**

14.     *Haddad* and the case at hand are distinguished from each other for two very critical reasons: 1) Haddad actually disputed the debt, whereas Plaintiff here did not, and 2) the collector in *Haddad* did not cease collection efforts despite its best attempts to verify the debt. First, the *Haddad* appellate court repeatedly states Haddad disputed the amount demanded. No. 13-2026 ("Haddad notified the Firm that he **disputed the amount** demanded"; "[t]he $50.00 balance from the previous management company is unsubstantiated and **I believe not valid**….") (emphasis added). However, in this case, Plaintiff never disputed the debt and only requested validation. Doc. 35-1 at 1-5; 7-8; 11-12). Without ever disputing the debt, Plaintiff cannot show that FDCPA §1692g(b) was violated, nor that the intent of the provision was not satisfied by Progressive. In fact, Plaintiff states the goal of FDCPA §1692g(b) was accomplished by the verification provided by Progressive when he states he "was not aware of ANY debt owed to the

City of Dallas or Penn Collection Agency." If he was and is not aware of any debt owed by him to the City of Dallas for the property address provided to him by Progressive, then he is free to dispute to dispute the debt to either Progressive or the original creditor. He did not dispute the debt to either Progressive or the City of Dallas and instead continued to demand validation to his subjective standards above the level contemplated and intended by the FDCPA and courts around the country.

15.    Second, here, after Progressive was notified that Plaintiff remained unsatisfied with the verification provided to him, Progressive informed Plaintiff the following:

> Upon receipt of [your] letter, Progressive put the account in a "hold status and requested the [verification of debt ("VOD"] from the City. The VOID that was provided to Progressive from the City was mailed to you on/about 27 December 2012.
>
> …
>
> Your subsequent letters indicated that you still disputed the debt in spite of the VOID that was sent to you. Consequently, Progressive asked the City for further VOD, but none was provided. In light of that, Progressive elected not to make further efforts to collect on the account. No further letters were sent to you and no phone calls were made to any phone number associated with the account….

Doc. 35-1 at 14-15. In contrast, the collectors in *Haddad*, sent with its itemization of outstanding charges a copy of a Notice of Lien it intended to file and then proceeded to file the lien and recorded it with the County Register of Deeds thereafter.Here, Progressive took no collection action after receiving Plaintiff's request for validation, sent him what was received from the City of Dallas, and when it did not satisfy Plaintiff and Progressive received no other material from the City of Dallas, it returned the account to the City with no further action. This cannot be a violation of FDCPA § 1692g(b) or collectors will never be able to validate a debt to a consumer's subjective liking and consumers will have a free ticket to sue under this provision of

the FDCPA every time one requests validation and the collector sends validation rather than ceasing collection. This Court should sustain Progressive's objection.

## III.
## CONCLUSION

16. This Court should sustain Progressive's objection and enter an order granting its Motion for Summary Judgment on Plaintiff's FDCPA §1692g(b) claims for numerous reasons. First, finding Progressive did not comply with FDCPA §1692g(b) is against the Congress' intent of the provision. The facts are that Plaintiff requested validation on the debt. Progressive obtained such validation from the Original creditor and sent it to Plaintiff all the while ceasing collection activity upon receipt of the validation request. According to Plaintiff, the validation materials allowed him to come to the conclusion that he did not know of any debt owed to the City of Dallas. This demonstrates Progressive's validation, regardless of whether Plaintiff subjectively concluded whether or not it was sufficient under the FDCPA, achieved the congressional intent of the provision by providing Plaintiff with information to contest the debt as he "was not aware of ANY debt owed to the City of Dallas or Penn Collection Agency." Doc. 35-1 at 4. Therefore, Progressive's Motion for Summary Judgment should be granted as to the FDCPA §1692g(b) claims.

17. Second, Progressive did in fact validate the debt, as described *supra*, which gave Plaintiff sufficient ability to dispute the debt. However, rather than disputing it, Plaintiff chose to use the FDCPA as a weapon against a collection agency doing all it could to comply with the Act rather than the Act's true purpose "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(a). There is no abusive debt collection here. Thus, this

Court should sustain Progressive's objection and grant its Motion for Summary Judgment in its entirety.

18.     Third, there cannot be a genuine issue of material fact on whether or not Progressive violated FDCPA §1692g(b) because it ceased collection the moment it received Plaintiff's request for validation. Numerous courts have held that a debt collector does not violate the FDCPA if it ceases collection and returns the account to the original creditor. *Hunsinger v. SKO Brenner American, Inc.*, Civil Action No. 3:13-cv-0988-D; *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926; *Jang v. AM Miller and Assocs.*, 122 F.3d 480; *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025;*Sambor v. Omina Credit Servs., Inc.* 183 F. Supp.2d 1234. How could it be a violation for a debt collection agency to do both cease collection and attempt to provide validation at the same time and then when the validation is not sufficient in Plaintiff's mind, to continue the cease of collections and return the account to the original creditor? Holding so not only hurts collection agencies, but more so the consumers because **no** collection agency would ever attempt to validate a debt in fear of complaints like the ones at hand. This would mean consumers would never be provided detailed information regarding their debt or alleged debt, which is intended to allow them to discovery if it is being collected from the wrong person or if they have already paid it, and the debt would merely be sent to more collection agencies. Both collection agencies and consumers face imminent harm except for one person, the Plaintiff in this case.

19.     Last, the Court should not follow the *Haddad* case as it does not follow Congress' intent of FDCPA §1692g(b) and for the same reasons above, it would only be detrimental to both collection agencies and more importantly, consumers. Again, the FDCPA was intended to protect from abusive collection practices. But here, Plaintiff and the Report and

Recommendation turn the tables and attempt to find Progressive potentially violated the FDCPA when it did everything it could to comply. It would simply be against public policy, harm collection agencies who do not use abusive debt collection practices such as Progressive, and further harm consumers as no FDCPA compliant collection agency would brave attempting to provide validation that was sufficient in a consumer's own opinion.[3] For these reasons, Progressive requests this Court to sustain its objection and grant its Motion for Summary Judgment in its entirety.

WHEREFORE, PREMISES CONSIDERED, Defendant Progressive Financial Services, Inc. respectfully requests this Court to sustain its objection to the Report and Recommendation on its Motion for Summary Judgment, grant its Motion for Summary Judgment in its entirety, and award any other relief, whether at law or in equity, justly entitled.

Respectfully submitted,

**ROBBIE MALONE, PLLC**

/s/ Robbie Malone
ROBBIE MALONE
State Bar No. 12876450
Email: rmalone@rmalonelaw.com
XERXES MARTIN
State Bar No. 24078928
Email: xmartin@rmalonelaw.com
ROBBIE MALONE, P.L.L.C.
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas   75231
TEL: (214) 346-2630
FAX: (214) 346-2631

ATTORNEYS FOR DEFENDANT

---

[3] Violations are evaluated "under an unsophisticated or lease sophisticated consumer standard." *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004); *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997). We must "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors. *Goswami*, 377 F.3d at 495. "At the same time we do not consider the debtor as tied to the very last rung on the [intelligence or] sophistication ladder." *Id.* (quoting *Taylor*, 103 F.3d at 1236).

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been forwarded **via CM/RRR** on this ___ day of November, 2014 to:

David Mack
7720 McCallum Blvd. #2099
Dallas, Texas 75252
(972) 735-9642

_/s/Robbie Malone_____